UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SANDRA A.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. C24-5608-MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Plaintiff contends that the administrative law judge ("ALJ") erred by misevaluating the medical evidence, misevaluating Plaintiff's testimony, and misevaluating the lay witness evidence. (Dkt. # 15.) The Commissioner filed a response arguing that the ALJ's decision is free of legal error, supported by substantial evidence, and should be affirmed. (Dkt. # 19.) Plaintiff filed a reply. (Dkt. # 20.) Having considered the ALJ's decision, the administrative record ("AR"), and the parties' briefing, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).[1]

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 4.)

## II. BACKGROUND

Plaintiff was born in 1973, has a high school education, and has worked as a health attendant. AR at 26. Plaintiff was last gainfully employed in October 2020. *Id.* at 19.

In October 2020, Plaintiff applied for benefits, alleging disability as of April 2019. AR at 17. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* After the ALJ conducted a hearing in May 2023, the ALJ issued a decision finding Plaintiff not disabled. *Id.*

Using the five-step disability evaluation process,[2] the ALJ found, in pertinent part, that Plaintiff had the severe impairments of schizoaffective disorder and bipolar disorder, that her schizoaffective disorder did not equal the severity of the listed impairments, and she had the residual functional capacity ("RFC") to perform a full range of work, but can only understand, remember, and carry out simple instructions, can only have occasional interaction with others, can only make simple decisions, and is unable to work at a strict production rate. AR at 22.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-3. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 7.)

## III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not supported by substantial evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). In applying this

[2] 20 C.F.R. § 416.920.

standard, the Court must consider the record as a whole to determine whether it contains sufficient evidence to support the ALJ's findings. *Id.*

Although the Court evaluates the record as a whole, it is not permitted to reweigh the evidence or substitute its judgment for that of the ALJ. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The ALJ is tasked with evaluating testimony, resolving conflicts in the medical evidence, and addressing ambiguities in the record. *Smartt*, 53 F.4th at 494-95. Where the evidence can be interpreted in more than one rational way, the ALJ's decision must be upheld. *Id.* Even if the ALJ erred, reversal is not warranted unless the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of demonstrating harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## IV. DISCUSSION

### A. The ALJ Erred in Evaluating Plaintiff's Testimony

Absent evidence of malingering, an ALJ is required to provide clear and convincing reasons for discounting a claimant's testimony. *See Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). That said, the ALJ is not required to believe every allegation, nor to analyze testimony line by line. *See Ahearn*, 988 F.3d at 1116; *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The question is not whether this Court is convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

The ALJ summarized the testimony of Plaintiff and her mother, A.W., as one and discounted it as inconsistent with the medical evidence, which showed improvement with treatment. AR at 22-24. Plaintiff argues the ALJ erred by only providing a selective summary of the medical evidence in determining that the medical evidence contradicted her testimony and

failed to provide germane reasons for discounting the lay witness testimony of A.W. (Dkt. # 15 at 9-13.)

The record contains medical notes for Plaintiff from 1993 through 2023. The notes from Behavioral Health Resources indicate that Plaintiff complied inconsistently with treatment during that time, discharging her from care frequently due to failure to attend therapy sessions. *See* AR at 845-51. She received social security income from 2012 to 2015 but stopped receiving it in 2015 due to her then-husband's income. *Id.* at 314. From 2018 to 2019 Plaintiff worked as a Nurse's Aide. *Id.* at 198. In February 9, 2019, Plaintiff came to the Emergency Department and doctors admitted her for treatment for her delusions after she caused disruption, threatening to sue the doctors treating her, stating that she was "very pregnant and way past due," insisting she was twelve months pregnant even though her tubes were tied, and both a pregnancy test and ultrasound were negative for pregnancy. *Id.* at 1051-54.

On June 28, 2019, Plaintiff was involuntarily admitted to inpatient mental health care after she was evicted, her residence "reportedly filled with canine feces and urine, dishes with molded food, and no access to food or fluid in the residence as well as no electricity." AR at 858. Upon admittance, she tested positive for methamphetamine. *Id.* But doctors found that Plaintiff's "[d]iagnoses [were] not attributable to substance use." *Id.* at 475. After a few weeks of treatment at the inpatient facility, Plaintiff was able to engage in treatment and discharge planning. *Id.* at 858. Doctors discharged her on July 29, 2019. *Id.* at 858. The same day she reengaged in care with Behavioral Health Resources. *Id.* at 859. When she returned for an appointment on August 5, 2019, she left the lobby abruptly before the appointment began after becoming agitated, yelling "I will come back with an attorney." *Id.* at 845. Her care was subsequently terminated in October 2019 for failure to attend a single appointment. *Id.* at 846.

There is a gap in Plaintiff's medical records until May 2020, when police officers brought her to the Emergency Department after she threatened people with a shovel and expressed delusions that she was "married to [T]rump." AR at 294. Plaintiff underwent competency assessments in relation to the criminal charges that arose from this incident in July and September 2020. *Id.* at 307. The evaluator noted that Plaintiff was doing "remarkably better" on September 8, 2020, compared to the July evaluation after taking her medications as prescribed while in the structured setting of the jail. *Id.* at 305-07. The psychologist therefore recommended that the criminal matter against Plaintiff could proceed, as she was competent to stand trial. *Id.* at 311. Plaintiff was released from the jail at some point before September 29, 2020, when she underwent an evaluation with the Washington State Department of Health Services ("DSHS"). *Id.* at 314. DSHS noted that Plaintiff was awaiting an October 12, 2020, Mental Health Court date. *Id.*

October 5, 2020, Plaintiff applied for social security benefits, alleging an onset date of April 30, 2019. AR at 169. "Although evidence that predates the alleged onset date of disability is of limited relevance, evidence that predates the claimant's application date but postdates the alleged onset date is pertinent to the alleged period of disability." *Pacheco v. Berryhill*, 733 F. App'x 356, 360 (9th Cir. 2018) (citing *Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1165 (9th Cir. 2008).

In November 2020, Plaintiff reengaged with Behavioral Health Services via telehealth from her home. AR at 322. Notes from her intake appointment indicate that Plaintiff remained under supervision of the Department of Corrections. *Id.* at 328. Plaintiff reported that her medications reduced the voices she heard but did not eliminate them. *Id.* at 322. Plaintiff engaged in regular counseling sessions via telehealth with Behavior Health Services through at

least April 7, 2023, the last treatment note contained in the record. *Id.* at 599. Plaintiff did not attend any counseling sessions with Behavioral Health Services in-person during this time,[3] attending via phone initially due to COVID restrictions and subsequently due to social anxiety. *Id.* at 600.

Plaintiff testified that she had to leave her employment as a health aid after what she calls a schizophrenic break. AR 42-43. Following this incident, she developed a fear of leaving the house. *Id.* at 43. She lives with her mother, sister, brother-in-law, daughter, daughter's boyfriend, and grandson and does not assist in the care of her grandson but does assist in the housework. *Id.* at 44. To help her overcome her fear of leaving the house she followed her counselor's advice of going for a half-mile drive to a nearby school once a day on weekdays. *Id.* Her mother drives her. *Id.* at 44. She does not go in public because of her hallucinations. *Id.* Medications make the hallucinations seem less real, but do not eliminate them entirely. *Id.* at 44-45. She used to go to the store once a month with her mother at the suggestion of her counselor, but she stopped being able to tolerate these trips due to anxiety. *Id.* at 46. She has not driven herself in three years and does not go on walks because she is afraid of dogs attacking her. *Id.* at 46-47.

Plaintiff further testified she has heard voices since she was 19 years old. AR at 47. She has difficulty concentrating and getting along with others when she is in a manic state. *Id.* at 215. Her manic state typically includes auditory and visual hallucinations. *Id.* Her mother similarly testified that Plaintiff struggles with memory and concentration when she is "in manic state," that she cannot focus on what is happening when in that state and cannot remember what happened while she was manic. *Id.* at 227.

[3] While November and December 2020 appointment notes indicate that service was provided in office, provider notes indicate that "the client was over the phone." AR 336-37, 342-43.

The ALJ failed to link Plaintiff's testimony to the particular portions of the record supporting the adverse credibility determination. *See Morsea v. Berryhill*, 725 F. App'x 463, 465 (9th Cir. 2018) (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 493–94 (9th Cir. 2015)) (noting that ALJ is required to "link the testimony to particular parts of the record supporting the adverse credibility determination"); *Lambert*, 980 F.3d at 1277 (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)) (holding that ALJ is required to "specifically identify the testimony [from a claimant] [they] find[] not to be credible and . . . explain what evidence undermines that testimony").

The ALJ focuses on medical evidence which shows "normal speech, cooperative behavior, and coherent, goal-directed, and logical thought process, and good recent memory, remote memory, attention, concentration, insight, and judgment." AR at 23. The ALJ does not explain how this evidence undermines Plaintiff's testimony that she has difficulty leaving the house and difficulty with concentration and memory when she is having a manic episode. The treatment records the ALJ cited to support these findings all reflect provider impressions of Plaintiff in telehealth visits, which Plaintiff attended from the comfort of her own home. *Id.*; *see also, e.g., id.* at 322, 399, 434, 630. None of these notes reflect Plaintiff's state of mind when she is hallucinating. Nor do any of these findings relate to Plaintiff's high levels of anxiety and ability to leave her house, which is well documented throughout her treating notes. *See, e.g., id.* at 580, 604, 623, 646, 655. Plaintiff told doctors that her hallucinations are worse when she is manic, though her mania greatly reduces her anxieties which increases her ability to leave the home. *Id.* at 621.

The ALJ also found that Plaintiff responded well to treatment, "maintained good functioning by taking medication as prescribed," and that her symptoms were stable. AR at 23.

But, in the context of mental health issues "[r]eports of 'improvement' . . . must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms . . . [and] an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (cleaned up). The doctor's notes reflecting that Plaintiff's symptoms are "stable" and that she is "operating at a baseline" also indicate that Plaintiff's baseline includes ongoing auditory hallucinations, high levels of anxiety, and panic attacks. *See*, *e.g.*, *id.* at 345-46, 402-04, 414-16. As noted by her therapist, Christopher Rutzer, LMHC, Plaintiff responds well to treatment "but symptoms can be difficult to manage." *Id.* at 486. "That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). The ALJ's finding that Plaintiff improved enough to function well was not supported by substantial evidence.

The ALJ did not provide clear and convincing reasons for discounting Plaintiff's testimony. As the ALJ provided the same reasoning for discounting the lay witness testimony of A.W., on remand she should also re-evaluate A.W.'s testimony.

**B. The ALJ Erred in Evaluating Medical Evidence**

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. § 416.920c(a)-(c). These findings must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

*1. Dr. Ruddell's Opinion, as affirmed by Dr. Petaja*

Plaintiff argues that the ALJ misevaluated the opinion of examining psychologist Alysa A. Ruddell, Ph.D., and affirmed by Holly Petaja, Ph.D., because the evidence the ALJ points to as not supporting the medical opinion is unrelated to Plaintiff's debilitating impairments and the ALJ failed to consider medical evidence which supported her opinion. (Dkt. # 15 at 2-4, 6-8.) The ALJ considered Dr. Ruddell's and Dr. Petaja's opinions together and found neither persuasive as the examination did not support the opinion. AR at 24-25. Specifically, the ALJ found that the mental status exam ("MSE") showed that Plaintiff had normal recall of five digits forwards and three digits backwards, could correctly identify the current President and states bordering Washington, and completed thirteen serial 3 subtractions with one common error. *Id.* at 24-25.

Dr. Ruddell evaluated Plaintiff in September 2020 and July 2022. AR at 481. In the 2020 evaluation, Dr. Ruddell found that Plaintiff had marked limitations in her ability to learn new tasks, adapt to changes in a work setting, complete a normal workday and work week without interruptions from psychologically based symptoms, and to set realistic goals independently. *Id.* at 316. In the 2022 evaluation, Dr. Ruddell found that Plaintiff had marked limitations in the same areas as well as her ability to maintain appropriate behavior in a work setting. *Id.* at 1078. Both evaluations found an overall marked severity. *Id.* at 316, 1078. Notes indicate that Dr. Ruddell based this opinion on her MSE findings and Plaintiff's hallucinations and anxiety. *Id.* at 1079.

Dr. Ruddell's 2020 MSE of Plaintiff found her mood to be anxious, her content of thought to be paranoid with both auditory and visual hallucinations, she was only able to recall two of three words after five minutes and none at the end of the interview. AR at 317. In 2022 Plaintiff's mood was again anxious, auditory and visual hallucinations were noted, and both her

recent and immediate memory were impaired, as she was only able to recall three digits forward and three digits backward, out of a potential five each, "rendering an abnormal MSE," her serial 3 concentration was impaired, and her executive functioning was impaired. *Id.* at 1078-80.

The ALJ's findings of normal recall and serial 3 subtraction are contradicted by the record. Moreover, it is unclear what relevance a normal fund of knowledge has to a medical professional determining that Plaintiff had marked limitations due to hallucinations and anxiety. Substantial evidence does not support the ALJ's rejection of Dr. Ruddell's and Dr. Petaja's opinions.

2. *Mr. Rutzer's Opinion*

Plaintiff argues the ALJ misevaluated the opinion of counselor Christopher Rutzer, LMHCA, as the medical evidence does not contradict his opinion, and the ALJ failed to consider evidence which supported his opinion. (Dkt. # 15 at 4-8.) The ALJ found Mr. Rutzer's opinion unpersuasive as contradicted by the overall medical record. AR at 25. Specifically, the ALJ found that treatment notes which showed "normal speech, behavior, thought process, memory, attention, concentration, insight, and judgment with medication" contradicted the severity of the limitations Mr. Rutzer opined. *Id.*

Mr. Rutzer provided his medical opinion on a form from Plaintiff's attorney, rating various mental abilities and aptitudes needed to carry out work on a five-point scale ranging from "unlimited" to "no useful ability to function." AR at 488. Mr. Rutzer opined that Plaintiff was "seriously limited," a three on the five-point scale, in all areas but five, where he opined that she was "unable to meet competitive standards," a four on the five-point scale. *Id.* at 488-89. The areas in which he opined Plaintiff was most limited were the ability to carry out detailed instructions, set realistic goals and make plans, deal with stress of semiskilled and skilled work, to travel in unfamiliar places, and to use public transportation. *Id.* at 489. He supported this

opinion on her diagnosis of schizoaffective disorder, her difficulty adjusting to public spaces, her associated mental health symptoms, and his treating notes from November 2020, when the treatment relationship began, to July 2022, when he provided his opinion. *Id.* at 332-358, 430-451, 486, 586-590.

The ALJ's decision is not supported by substantial evidence. The ALJ points to evidence in the record which shows normal "insight and judgment with medication," AR at 25, but fails to consider the full context of this note, which reads that Plaintiff's insight and judgment being good in the context of her mental health means she recognizes her problems and the need for treatment. *See*, *e.g.*, *id.* at 329, 349, 557, 653. Furthermore, MSEs, which indicate normal speech, behavior, thought process, memory, attention, and concentration, also indicate ongoing hallucinations, which Plaintiff described as loud but unintelligible with the aid of medication. *Id.* at 329, 337, 616, 631. It is an error for the ALJ to ignore evidence of ongoing hallucination in determining that the overall medical record does not support Dr. Rutzer's opinion. *See Garrison*, 759 F.3d at 1017 n.23 ("The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits.") Psychiatric notes from Plaintiff's time involuntarily committed for mental health treatment in 2019 further demonstrate the error of this reasoning. *See id.* at 882-939. Providers determined that Plaintiff suffered from "grave disability" and was required to continue receiving involuntary care even when her MSE findings indicated normal speech, behavior, thought process, memory, and attention. *Id.* at 895-96. The ALJ erred in discounting the opinion of Mr. Rutzer.

*3. Dr. Gilbert's Opinion*

Plaintiff argues the ALJ failed to incorporate the limitations opined by John Gilbert, Ph.D., into the RFC but also gave too much weight to Dr. Gilbert's opinion of her ability to

work, which was beyond his expertise. (Dkt. # 15 at 8-9.) Specifically, Plaintiff argues that the ALJ failed to account for Dr. Gilbert's opinion that she "may have occasional lapses in concentration, persistence, or pace." (*Id.* at 9.) The ALJ found the limitations of the State agency psychological consultants, including Dr. Gilbert, were not persuasive because the evidence as a whole supported finding Plaintiff more limited than they opined. AR at 24. Plaintiff has not shown how the RFC, which limits Plaintiff to work with simple instructions, and without a strict production rate, fails to account for Dr. Gilbert's opinion. *Id.* at 22. Accordingly, Plaintiff has not shown harmful error in the ALJ finding Plaintiff more impaired than Dr. Gilbert's opinion.

**C. Proper Remedy is Remand for Further Proceedings**

Plaintiff requests remand for an award of benefits because Dr. Ruddell's and Mr. Rutzer's opinions, Plaintiff's testimony, and the lay evidence, if credited as true, would support a finding of disability. (Dkt. # 20 at 10.)

Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). To determine whether such an award is appropriate, the Court applies a three-step framework. *Id*. at 1045. First, the Court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id*. (citing *Garrison*, 759 F.3d at 1020). Second, the Court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Treichler*, 775 F.3d at 1101 (internal citations and quotation marks omitted). If the first two steps are satisfied, the Court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Even if the Court concludes all

three steps are satisfied, "it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

Here, outstanding issues remain for the ALJ to resolve. Dr. Ruddell's and Mr. Rutzer's opinions conflict with Dr. Sharrette's opinion. The ALJ must resolve this conflict. *See Ahearn*, 988 F.3d at 1115 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.") (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In addition, even if Mr. Rutzer's opinion were accepted, the ALJ would need to determine how to interpret "unable to meet competitive standards" into an RFC. *See* AR 488-89. Because unresolved conflicts remain in the record, remand for further proceedings is appropriate.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate Plaintiff's symptom testimony, A.W.'s testimony, and the medical opinions of Dr. Ruddell, Dr. Petaja, and Mr. Rutzer; reassess whether Plaintiff meets a listed impairment and the RFC as necessary; and proceed to step five as appropriate.

Dated this 8th day of April, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge